Ray Bourhis, Esq. SBN 53196
Eric Whitehead, Esq. SBN 301449
RAY BOURHIS ASSOCIATES
12 Funston Avenue
San Francisco, CA 94129
Tel: (415) 392-4660
Fax: (415) 421-0259
RFBourhis@gmail.com
Eric.Whitehead@RayBourhis.com

Attorneys for Plaintiff, Ed Daie

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ED DAIE, | ) Case No.: |
| | ) |
| Plaintiff, | ) COMPLAINT FOR INTENTIONAL |
| | ) INFLICTION OF EMOTIONAL |
| v. | ) DISTRESS |
| | ) |
| Defendants, | ) JURY TRIAL REQUESTED |
| | ) |
| INTEL CORPORATION, THE REED | ) |
| GROUP, CLAIM APPEAL FIDUCIARY | ) |
| SERVICES, and DOES 1-50 | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

Plaintiff ED DAIE hereby requests a trial by jury of all issues in this matter.

COMES NOW, Plaintiff ED DAIE and alleges as follows:

I. PARTIES

1.     Plaintiff ED DAIE (hereinafter "DAIE") alleges that defendant INTEL

CORPORATION (hereinafter "INTEL") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and is authorized to transact and is transacting business in the State of California.

2.   The corporate headquarters of INTEL is at 2191 Laurelwood Road, Santa Clara, CA, 95054.

3.   DAIE alleges that defendant REED GROUP is a corporation duly organized and existing under and by virtue of the laws of the State of Colorado and is authorized to transact and is transacting business as a third-party claims administrator in the State of California.

4.   The corporate headquarters of REED GROUP is at 10355 Westmoor Drive, Westminster, CO 80021.

5.   DAIE alleges that defendant CLAIM APPEAL FIDUCIARY SERVICES (hereinafter "CAFS") is a corporation duly organized and existing under and by virtue of the laws of the State of Colorado and is authorized to transact and is transacting business as a third-party claims administrator in the State of California.

6.   The headquarters of CAFS is located at 2475 Northwinds Parkway, Suite 200, Alpharetta, GA 30009.

7.   The true names and capacities, whether individual, corporate, government, associate or otherwise of defendants DOES 1 through 50, inclusive, are unknown to DAIE who therefore sues said defendants by such fictitious names.   DAIE will amend this complaint to allege their true names and capacities when ascertained.   DAIE is informed and believes and, therefore, alleges that each of the defendants designated herein caused injury and damages proximately to DAIE and are therefore responsible to

1   DAIE for the damages requested.

2       8.  At all times relevant herein INTEL, REED GROUP, CAFS and DOES 1-50

3   acted as the employees and agents of each other, and in taking the actions hereinafter

4   alleged, each acted within the course and scope of such employment and agency, with

5

6   the full knowledge, consent, permission and ratification of one another.

7                                   II. JURISDICTION

8       9.  This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C.

9   §1332(a). No Defendant is a citizen of the same state as Plaintiff and the amount in

10

11  controversy exceeds $75,000.00, exclusive of interest and costs.

12                              III. FACTUAL BACKGROUND

13      10. DAIE alleges that the Defendants are responsible for all tortious, harassing,

14  and oppressive conduct that occurred during the investigation of his insurance claim.

15

16      11. DAIE alleges that REED GROUP and CAFS make all claims decisions on

17  employee benefit plans issued by INTEL.

18      12.     Defendant INTEL issued a Long-Term Disability Benefit Plan to DAIE

19  (Plan Number 10037343; hereinafter "PLAN").

20      13.     At all relevant times prior to September 22, 2014, DAIE was the Server

21  Memory and Security Technology Director at INTEL.

22

23      14.     DAIE fully performed all duties required of him under the PLAN.

24      15.     DAIE suffers from severe asthma, allergic rhinitis, chronic sinusitis,

25  obstructive sleep apnea, meralgia paresthetica, recurrent polypoid disease,

26  osteonecrosis, and lumbar spondylosis.

27      16.     His condition, including the side effects of medical treatment, worsened

28

1   until he could no longer continue working on September 22, 2013.

2        17.    Prior to his injury, DAIE worked full-time as a Director of Technology at
3
    INTEL, overseeing the work of hundreds of INTEL employees across many sites and
4
    product divisions.  In this role, he led the development of new server and workstation
5
6   memory architecture at INTEL by deploying five generations of memory and security

7   technologies across the company's platforms.  He was responsible for delivering

8   complex technical solutions to more than 15 memory and security-related projects. His
9
    position required: acute mental clarity, concentration, executive-level management
10
11  skills, effective communication, the capacity for technical problem-solving, and the

12  ability to process information quickly.

13       18.    DAIE's asthma, allergic rhinitis, and chronic sinusitis are extreme and life-

14  threatening. He has undergone 8 different sinus surgeries in the past decade in an

15  attempt to correct these conditions; however, no treatment has been successful.  DAIE
16
    must treat his symptoms with a strict regimen of medication: Prednisone, Fluconase,
17
18  QVAR inhaler, Symbicort, Pro-Air inhaler, Ventolin nebulizer, and Xolair.  If he fails to

19  take his medication correctly, he will die within 24 hours.  These medications have

20  debilitating side effects that prevent him from performing the substantial and material

21  duties of his occupation.  Side effects include fatigue, loss of memory, confusion,
22
    inability to process information, inability to communicate clearly, and insomnia.  The
23
24  threat of exposure to allergens has forced DAIE to work from home in Arizona for the

25  past 7 years, without the ability to travel for work.  He lives a substantial portion of his

26  life indoors in order to prevent contact with life-threatening allergens.  DAIE's asthma
27
    and sinus conditions have worsened over time with no signs of improvement.
28

19.     DAIE takes Prednisone steroid allergy medication, which has a devastating impact on his mental health.  As the Defendants are aware, the medication has induced clinical depression, anxiety, and a mood disorder in DAIE.  He experiences other common side effects of the medication, including blurred vision, dizziness, aggression, headaches, and irritability. DAIE's ability to interact in business and social settings is greatly diminished.  He is in an emotionally fragile state and rarely leaves his home.  Despite intensive medical treatment and heavy medication, DAIE constantly suffers from his conditions.  Doctors have determined that due to the severity of his asthma he does not have other medication alternatives.

20.     In April 2012, Dr. Ibrahim Aksoy diagnosed DAIE with Meralgia Paresthetica.  This is a neurological disorder that causes nerve deterioration from the base of the spinal column to the thighs.  EMGs, x-rays, MRIs, and bone density scans have repeatedly affirmed this diagnosis.  As a result of the disorder, DAIE experiences severe chronic pain and a burning sensation throughout his lower back and thighs. DAIE's condition has become more severe over time.  In April 2013, a team of physicians at the Mayo Clinic concluded that the illness was causing osteonecrosis and degenerative changes in DAIE's right hip.  In this area, he experiences extreme discomfort and pain when required to sit or walk for 10 minutes or more.  This forces DAIE to constantly shift his physical position, preventing him from traveling any significant distance by car or plane.  DAIE treats his nerve pain with both steroid injections and Gabapentin.

21.     In April 2012, DAIE was also diagnosed with lumbar spondylosis, which is degenerative osteoarthritis of the joints in the lumbar region of the spine.  Multiple MRIs

have revealed a narrowing of DAIE's lumbar spinal canal at L3-L4, facet hypertrophy at L5-S1, loss of disk height, and spinal stenosis.  Like Meralgia Paresthetica, this condition causes severe chronic pain in DAIE's lower back.  The pain prevents him from sitting or standing for any extended period of time.  DAIE has treated the condition with spinal steroid injections.  However, this has only been minimally effective in reducing his pain.  Due to the degenerative nature of this condition, DAIE's pain will continue to worsen in the future without the possibility of improvement.

22.     DAIE made a claim for disability benefits under his PLAN on August 30, 2012.  Upon filing his claim, DAIE submitted medical records and letters supporting his disability from the following team of treating physicians: Amy Foxx-Orenstien, D.O., Laura Wilda, C.N.P., Harry Teaford, M.D., Paul Snyder, M.D., Lee Ann Kelley, M.D., Stephen Graham, M.D., David Barrs, M.D., John Raines, M.D., Renee Espinosa, M.D., Ibrahim Aksoy, M.D., Phillip Lyng, Lynda Facchiano, M.D., Amit Patel, M.D., Charlene Hoffman Snyder, C.N.P., Christopher Beauchamp, M.D., Michael Whitaker, M.D., Susan Sterler, R.N., Robert Ferrigni, M.D., and Earl Labovitz.  The record also contained countless objective medical tests in support of his disabilities, including x-rays, MRIs, blood work, CT scans, bone density scans, lung capacity tests, genetic enzyme tests, spirometry tests, pulmonary function tests, sleep studies, and neurological examinations.

23.     Acting as claims administrator for the PLAN, REED GROUP paid DAIE short-term disability benefits from September 25, 2012 until September 20, 2013.  At that time, REED GROUP wrongfully denied DAIE's claim for long-term disability (LTD) benefits on the basis that there were no "Objective Medical Findings" in his claim file

that showed a medical condition or a combination of conditions that precluded him from returning to work at INTEL.

24.     In violation of California law, the PLAN defines Total Disability as, "any illness or injury that renders a Participant incapable of performing work. Both the illness or injury, and the ability to perform work, must be substantiated by Objective Medical Findings."  The PLAN defines "Objective Medical Findings" extremely narrowly, excluding any tests that are deemed to rely on Participant self-reports, physicians' opinions, "or other third party opinions based on the acceptance of subjective complaints (e.g. headache, fatigue, pain, and nausea)."

25.     On March 14, 2014, DAIE requested a first-level appeal of the REED GROUP's claim denial.  On June 11, 2014, the REED GROUP upheld its claim denial on appeal, stating that "there were no Objective Medical Findings of the disabling impact of a condition or combination of conditions that prevented him from working in any occupation."

26.     On December 4, 2014, DAIE requested a final appeal of his LTD claim denial.  At that time, INTEL retained CAFS to perform an appeal review of the LTD Plan claim appeal denials.  In a letter sent April 30, 2015, CAFS upheld the denial of DAIE's claim under the same rationale as REED GROUP.

27.     The Total Disability provisions of the PLAN provide benefits until the claimant turns age 65.

28.     At the time of the filing of his claim, and at all times thereafter, DAIE was and is entitled to receive benefits under the Total Disability provisions of his PLAN.

29.     Soon after investigating DAIE's claim, Defendants determined that he was

entitled to Total Disability benefits.  Despite that fact, Defendants repeatedly engaged in extreme and outrageous conduct with the aim of forcing DAIE to drop his claim and return to work.

30.   The Defendants' intentional conduct included, but was not limited to: falsely alleging that DAIE was lying about and exaggerating his physical disability; purposely misstating and misrepresenting statements made by DAIE and his treating physicians; knowingly insisting, over DAIE's objections, on enforcing an insurance definition of Total Disability that Defendants were well aware was in violation of well-established California law; ignoring objective medical tests provided in the medical record; changing the definition of "Objective Medical Findings" during repeated oral and written correspondence with claims administrators; repeatedly disregarding MRIs, CT scans, x-rays, and DNA mapping as "not Objective Medical Findings" without justification; pressuring DAIE to engage in further medical testing that they knew would cause the insured pain, emotional distress, and anxiety; forcing DAIE to undergo a litany of rigorous medical examinations without considering their results; failing to perform appeal reviews in a timely manner in violation of California law; repeatedly challenging DAIE's character and truthfulness despite the existence of overwhelming medical evidence supporting his claim.

31.   The intentional conduct of the Defendants' has caused extreme mental, physical, and emotional distress to DAIE.  The Defendants' repeated allegations that the Plaintiff was lying about or exaggerating his condition have produced a wide range of emotional reactions in the Plaintiff  including fear, anxiety, stress, sadness, frustration, anger, and feelings of hopelessness.  DAIE has also experienced mental and physical

reactions to his legal battle with the Defendants, including difficulty breathing and enhanced symptoms of depression such as fatigue, difficulty concentrating, and diminutions to interest in life and in living. The Defendants' urged DAIE to undergo new medical tests and take experimental medications that have taken a devastating physical toll on the Plaintiff's body.  The Defendants also induced DAIE to increase the dosage of his existing medications during the claims investigation, which only aggravated his physical, emotional, and mental conditions. The Defendants' improper conduct and claims mishandling have deeply worsened the Plaintiff's anxiety and clinical depression.

<u>FIRST CAUSE OF ACTION</u>

(Intentional Infliction of Emotional Distress against INTEL, REED GROUP, CAFS, and DOES 1-50.)

32.     Plaintiff DAIE incorporates by reference paragraphs 1 through 31, inclusive, of the complaint as though set forth in the cause of action.

33. As his insurer, claims administrators, and employer, the Defendants are in positions of actual power to affect DAIE's claim approval and future financial interests.

34. The Defendants have full access to DAIE's medical records and are thus extremely aware of his physical disabilities and weak emotional state.  The Defendants know that DAIE is particularly vulnerable to emotional distress.

35. The Defendants engaged in extreme and outrageous conduct that they knew and know would cause the claimant severe mental distress.  This is an intentional tactic to force DAIE to drop his disability claim, return to work in pain, and/or accept a smaller settlement than he is rightly entitled to under his PLAN.

36.    Alternatively, the Defendants acted with reckless disregard as to whether their actions would cause DAIE severe mental distress.

37.    As a direct and proximate result of the aforementioned extreme and outrageous conduct, DAIE has been injured and damaged in an amount to be determined according to proof at trial.

38.    The actions of Defendants were and are malicious, fraudulent, and oppressive by clear and convincing evidence.

WHEREFORE, DAIE prays for judgment against Defendants, and each of them, as hereinafter set forth.

<u>PRAYER FOR RELIEF</u>

AS TO THE FIRST CAUSE OF ACTION:

WHEREFORE, DAIE prays for relief as follows:

1.    General damages against Defendants INTEL, REED GROUP, CAFS, and DOES 1-50 for emotional distress in a sum to be determined at the time of trial.

2.    Special damages in an amount according to proof at trial;

3.    Exemplary damages in an amount according to proof at trial;

4.    For such other and further relief as the Court deems just and proper.


Dated:  April 22, 2016                    Respectfully submitted,

                                          RAY BOURHIS ASSOCIATES

                                          By: _____
                                              Eric Whitehead
                                              Attorney for Plaintiff,
                                              ED DAIE

---

10

Case No.:

**COMPLAINT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1

2

3

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff ED DAIE herewith demands a jury trial on all issues.

4

5

Dated:  April 22, 2016

Respectfully submitted,

6

RAY BOURHIS ASSOCIATES

7

8

By:_____

9

Eric Whitehead
Attorney for Plaintiff,
ED DAIE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Case No.:

**COMPLAINT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
